UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| COMMONWEALTH OF MASSACHUSETTS,<br><br>        Plaintiff,<br><br>  v.<br><br>CARGILL, INC. and SALT CITY, INC.,<br><br>        Defendants. | Case No. 1:20-cv-11616 |

**CONSENT DECREE**

WHEREAS, Cargill, Inc. ("Cargill") owns and Salt City, Inc. ("Salt City") operates a road salt warehousing, storage, and transportation facility at 163 Union Street in Westfield, Massachusetts (the "Facility");

WHEREAS, the Commonwealth of Massachusetts ("Commonwealth"), acting through the Office of the Attorney General ("Attorney General's Office"), alleges in its Complaint that Cargill and Salt City (jointly the "Companies") have discharged industrial stormwater from the Facility into the Westfield municipal separate storm drain system, which discharges into Powdermill Brook, a tributary of the Westfield River, without obtaining and complying with a federal stormwater permit issued by the United States Environmental Protection Agency ("Stormwater Permit"), in violation of the Federal Clean Water Act, 33 U.S.C. §1331(a);

WHEREAS, on August 9, 2019, the Attorney General's Office provided notice of the alleged violations and of the Attorney General's Office's intention to file suit against the Companies ("Notice") to the Administrator of the United States Environmental Protection Agency ("EPA"); the Administrator of EPA Region 1; the Massachusetts Department of

1

Environmental Protection; and to the Companies, pursuant to Section 505 of the Federal Clean Water Act, 33 U.S.C. §1365;

WHEREAS, following receipt of the August 9, 2019 Notice, the Companies have taken certain steps, including obtaining coverage under the EPA's Multi-Sector General Permit for Industrial Activities ("MSGP") and developing and implementing plans for an amended Storm Water Pollution Prevention Plan ("SWPPP") under the Stormwater Permit, and to properly control and monitor stormwater pollutant discharges from the Facility pursuant to the standards of the MSGP;

WHEREAS, the Companies anticipate that these steps, together with the implementation of the measures set forth herein and in the Companies' SWPPP for the Facility, will enable them to comply with the requirements of the Federal Clean Water Act;

WHEREAS, today the Attorney General filed a complaint against the Companies in the United States District Court, District of Massachusetts;

WHEREAS, the Attorney General's Office, Cargill, and Salt City have reached an agreement to resolve the ligation; and

WHEREAS, this Consent Decree shall be submitted to the United States Department of Justice for the 45-day statutory review period, pursuant to 33 U.S.C. § 1365(c).

NOW THEREFORE, based on the Joint Motion of the Parties for Entry of this Consent Decree, before taking any testimony, without the adjudication of any issues of fact or law except as provided in Section 1 (Jurisdiction and Venue), and without the Parties admitting or denying any allegations, it is ADJUDGED, ORDERED, AND DECREED, as follows:

2

## I. JURISDICTION AND VENUE

1. This Court has jurisdiction over the parties and the subject matter of this action pursuant to Section 505(a)(1)(A) of the Federal Clean Water Act, 33 U.S.C. § 1365(a)(1)(A), and 28 U.S.C. § 1331 (an action arising under the laws of the United States). Venue is proper in the District of Massachusetts pursuant to Section 505(c)(1) of the Federal Clean Water Act, 33 U.S.C. § 1365(c)(1).

2. The Complaint alleges facts that, if proven, would constitute good and sufficient grounds for the relief set forth in this Consent Decree.

## II. EFFECTIVE DATE

3. The effective date of this Consent Decree ("Effective Date") shall be when the Court enters the Consent Decree on the docket.

## III. PARTIES BOUND

4. This Consent Decree shall constitute a binding agreement between the parties, and the Companies each consent to its entry as a final judgment by the Court and waive all rights of appeal upon its entry on the docket. If the Court declines to enter this Consent Decree on any ground except one related to form, this Consent Decree is voidable at the option of any party within fourteen (14) days of the Court's decision. If, on the other hand, the Court determines that substantive modifications to this Consent Decree are necessary prior to the Court's entry of it, the parties shall enter into good faith negotiations to discuss the modifications, and this Consent Decree shall be void unless the Commonwealth, Cargill, and Salt City agree otherwise in writing within fourteen (14) days of the Court's decision.

5. The provisions of this Consent Decree shall apply to and bind Cargill and any person or entity acting by, for, or through Cargill whose duties might include compliance with

3

and provision of this Consent Decree, including Cargill's managers, directors, officers, supervisors, employees, agents, servants, attorneys-in-fact, successors, and assigns who have such duties, and those persons in active concert or participation with Cargill who receive notice of this Consent Decree.

6.    The provisions of this Consent Decree shall apply to and bind Salt City and any person or entity acting by, for, or through Salt City whose duties might include any provision of this Consent Decree, including Salt City's managers, directors, officers, supervisors, employees, agents, servants, attorneys-in-fact, successors, and assigns who have such duties, and those persons in active concert or participation with Salt City who receive notice of this Consent Decree.

7.    Cargill shall provide a true copy of this Consent Decree to all of its managers, directors, officers, supervisors, employees, and agents whose duties might include compliance with any provision of this Consent Decree. Cargill shall also provide a copy of this Consent Decree to any contractor retained by it to perform stormwater management improvements required under this Consent Decree and shall inform each contractor of the obligation to perform its work in compliance with the terms of this Consent Decree. Copies provided to agents and contractors may be redacted to keep financial provisions confidential.

8.    Salt City shall provide a true copy of this Consent Decree to all of its managers, directors, officers, supervisors, employees, and agents whose duties might include compliance with any provision of this Consent Decree. Salt City shall also provide a copy of this Consent Decree to any contractor retained by it to perform stormwater management improvements required under this Consent Decree and shall inform each contractor of the obligation to perform

4

its work in compliance with the terms of this Consent Decree. Copies provided to agents and contractors may be redacted to keep financial provisions confidential.

9.     This Consent Decree is binding upon all successors and assigns. At least thirty (30) days prior to any change or transfer in ownership, management, or operation of the Facility to an independent, unrelated person or entity, the Companies shall provide a copy of this Consent Decree to the proposed owner, new manager, or operator (collectively the "transferee") and shall simultaneously provide written notice of the prospective change or transfer in ownership, management, or operation of the Facility, or any portion thereof, together with a copy of the proposed written change or transfer agreement, to the Attorney General by email in accordance with Section X (Notices) of this Consent Decree. No change or transfer in ownership, management, or operation of the Facility or any portion thereof, whether in compliance with the procedures of this Paragraph or otherwise, shall relieve the Companies' or their managers, directors, officers, supervisors, employees, agents, servants, attorneys-in-fact, successors, or assigns of any obligation under this Consent Judgment, unless:

    a. The transferee agrees, in writing, to undertake the obligations required by Section IV (Payments), Section V (Injunctive Relief), and Section VI (Facility Access and Submission of Records) and to be added as a defendant or substituted for one or more of the Companies as a Party under the Consent Decree and thus assume the obligations, rights, and benefits of, and be bound by, its terms;

    b. The Commonwealth agrees to consent, in writing, with such consent not being unreasonably denied or delayed, to relieve the one or more of the Companies of its obligations under the Consent Decree; and

    c. The transferee becomes a party to this Consent Decree pursuant to Paragraph 36.

5

    d.    Any attempt to change or transfer ownership, management, or operation of the Facility without complying with this Paragraph shall constitute a violation of this Consent Decree.

10.    Neither Cargill nor Salt City shall violate this Consent Decree, and neither company shall allow their officers, directors, agents, servants, attorneys-in-fact, employees, successors, assigns, or contractors to violate this Consent Decree. In any action to enforce this Consent Decree, neither Cargill nor Salt City shall raise as a defense the failure by any of Cargill or Salt City's managers, directors, officers, supervisors, employees, agents, or contractors to take any actions necessary to comply with the provisions of this Consent Decree.

11.    In addition to any relief specifically provided in this Consent Decree, the Companies understand and agree that violations of this Consent Decree may by punishable by contempt pursuant to an appropriate civil contempt proceeding.

## IV. PAYMENTS

### *Payments by Cargill*

12.    Within thirty (30) days of the Effective Date, Cargill shall pay to the Westfield River Watershed Association the sum of forty thousand dollars ($40,0000) for projects to improve water quality in the Westfield River. Cargill's payment shall be made by wire transfer to the bank account for the Westfield River Watershed Association, in accordance with written instructions provided to Cargill's attorney by the Attorney General's Office. Evidence of Cargill's wire payment to the Westfield River Watershed Association shall be contemporaneously provided to the Commonwealth in accordance with the notice provision of paragraph 34.

13.    Within thirty (30) days of the Effective Date Cargill shall reimburse the Attorney General's Office in the amount of fifteen thousand dollars ($15,000) to defray the Attorney General's Office's costs, including attorney fees, incurred in connection with its work on this matter. Payment should be made by Electronic Funds Transfer ("EFT") to the Commonwealth of Massachusetts in accordance with current EFT procedures, using the following account information:

COMMONWEALTH OF MASSACHUSETTS, OFFICE OF ATTORNEY GENERAL

REFERENCE: EPD, COMMONWEALTH v. CARGILL, INC.

Any payments received by the Commonwealth after 4:00 P.M. (Eastern Time) will be credited on the next business day. At the time of payment, Cargill shall send notice that such payment has been made to the Commonwealth in accordance with the notice provision of Paragraph 34.

*Payments by Salt City*

14.    Salt City shall pay to the Westfield River Watershed Association the sum of forty thousand dollars ($40,0000) for projects to improve water quality in the Westfield River. Salt City shall make this payment in equal monthly installments of six thousand, six hundred seventy dollars ($6,670.00) commencing on the first day of the month following the Effective Date (but no sooner than 30 days thereafter) and continuing for a period of six (6) months. Salt City's monthly payments shall be made by wire transfer to the bank account for the Westfield River Watershed Association, in accordance with written instructions provided to Salt City's attorney by the Attorney General's Office. Evidence of Salt City's wire payment to the Westfield River

7

Watershed Association shall be contemporaneously provided to the Commonwealth in accordance with the notice provision of paragraph 34.

15.    Within thirty (30) days of the Effective Date Salt City shall reimburse the Attorney General's Office in the amount of fifteen thousand dollars ($15,000) to defray the Attorney General's Office's costs, including attorney fees, incurred in connection with its work on this matter. Payment should be made by Electronic Funds Transfer ("EFT") to the Commonwealth of Massachusetts in accordance with current EFT procedures, using the following account information:

COMMONWEALTH OF MASSACHUSETTS, OFFICE OF ATTORNEY GENERAL

REFERENCE: COMMONWEALTH v. SALT CITY, INC.

Any payments received by the Commonwealth after 4:00 P.M. (Eastern Time) will be credited on the next business day. At the time of payment, Salt City shall send notice that such payment has been made to the Commonwealth by electronic mail in accordance with the notice provision of Paragraph 34.

### V. INJUNCTIVE RELIEF

16.    The Companies agree to operate the Facility in compliance with the applicable requirements of the Stormwater Permit, including any amendments thereto, and with the Federal Clean Water Act.

17.    Industrial Stormwater

    a.    *Improve Pollutant Reduction Measures*. The Companies will direct and properly control stormwater at the Facility to minimize pollutants "to the

8

extent achievable using control measures (including best management practices) that are technologically available and economically practicable and achievable in light of best industry practice" in Stormwater discharges from the Facility. *See* MSGP Section 2.0. Specifically, the Companies will take the following actions by the following dates:

i. By the Effective Date, the Companies will properly control dust without allowing discharge of dust control water into the Westfield municipal separate storm drain system.

ii. By the Effective Date, the Companies will ensure that any precipitation that enters salt-storage building structures during floods, storm events, or as a result of snowmelt, is appropriately removed or disposed of and not discharged into the Westfield municipal separate storm drain system. Subject to the implementation of the measures described in Subparts (iv) and (v) of this section, the Companies will ensure that any brine water that collects under or adjacent to the outdoor salt pile after floods, storm events, or as a result of snowmelt, is appropriately removed or disposed of and is not discharged into the Westfield municipal separate storm drain system.

iii. Within two (2) months of the Effective Date, the Companies shall,

    a. to the maximum extent practicable, minimize the presence and footprint of exposed salt at the Facility;

    b.  ensure that the untreated salt pile is properly covered in accordance with Appendix 12 of the Facility's Stormwater Pollution Prevention Plan and with best industry practice; and

    c.  ensure that opening, re-covering, and overall management of the untreated salt pile is designed to minimize the potential for precipitation coming into contact with the untreated salt.

iv.  Within six (6) months of the later of either the Effective Date or the obtaining of all permits required for the work (with appeal periods expired), the Companies shall install an asphalt berm along the southwest perimeter of the outdoor salt storage pad. The berm shall be toed into the existing pad and be six inches tall and two hundred and forty (240) feet long. The berm will divert stormwater from going under the outdoor salt pile and deter any ponding adjacent to or under the outdoor salt pile. The location of the berm is depicted on Exhibit A hereto. To the extent that any permits or approvals are required for this work, the Companies shall—no later than one (1) month after the Effective Date—submit complete applications for all such permits and approvals and shall take all other actions necessary to obtain all such permits and approvals.

v.  Within six (6) months of the later of either the Effective Date or the obtaining of all permits required for the work (with appeal periods expired), the Companies shall plug the two catch basins in the vicinity of the outdoor salt pile so that no stormwater runoff or snow melt

enters these two catch basins. The location of these catch basins is depicted on Exhibit A hereto. To the extent that any permits or approvals are required for this work, the Companies shall—no later than one (1) month after the Effective Date—submit complete applications for all such permits and approvals and shall take all other actions necessary to obtain all such permits and approvals.

b. *Document Rail Conveyor Operations.* Within one month of the first salt unloading event following the Effective Date, the Companies shall provide the Attorney General's Office with a video recording of the operation of the rail conveyor and surrounding area during unloading of salt from the rail cars. The video recording shall make clear and evident, through visual imagery and/or by accompanying written narrative certified under pains and penalties of perjury as to accuracy:

   i.   the date and time on which it was recorded;

   ii.  the location or locations at which it was recorded;

   iii. the persons present during the unloading event;

   iv.  the way the unloading occurred;

   v.   the way dust was suppressed during the unloading; and

   vi.  the extent and nature of any spillage of salt or other materials during the unloading.

## VI. FACILITY ACCESS AND SUBMISSION OF RECORDS

18. The Companies shall permit the Attorney General's Office to visit the Facility during normal daylight business hours during each year for the three (3) years following the

11

Effective Date, provided that the Attorney General's Office provides at least twenty-four (24) hours of prior notice, visits during standard operating hours, and complies with all health and safety requirements. During any site visit, the Attorney General's Office shall have access to and permission to copy any documentation required to be kept on site by the Stormwater Permit and may collect samples and take photos at the Facility. Any sampling shall involve split sampling so that both the Attorney General's Office and the Facility may independently test the samples. The Attorney General's Office will provide the Facility with copies of photos taken at the Facility.

19.    During the first year following the Effective Date, the Companies shall, to the extent practicable, provide at least 24-hours of advance notice to the Attorney General's Office of five expected rail car unloading dates and times so that a representative from the Attorney General's Office may elect to observe the activities while they are occurring.

20.    For a period of three (3) years following the Effective Date, the Companies shall provide the Attorney General's Office with the following documents in accordance with Section X (Notices), below:

a.    Copies of all documents Cargill and Salt City submit to EPA, the Commonwealth of Massachusetts, and/or the Town of Westfield concerning the Companies' stormwater controls or the quality of the Companies' stormwater discharges, including but not limited to all documents and reports submitted as required by the Stormwater Permit. Such documents and reports shall be sent to the Attorney General's Office on the same day that they are submitted to the governmental entity.

12

b. All maintenance records for the Facility's stormwater pollution control systems. Maintenance records will be provided within ten (10) business days of the Companies' receipt of a written request by the Attorney General's Office.

c. Timely written notice of any planned or completed changes to the Companies' stormwater control measures, with dates of anticipated or completed changes.

d. Current copies the Companies' SWPPP within three (3) business days of a request by the Attorney General's Office.

e. Laboratory reports and analytical results of stormwater sampling performed by or for either company within ten (10) business days of receiving the reports.

21. Any information provided by the Companies may be used by the Commonwealth in any proceeding to enforce the provisions of this Consent Decree and as otherwise permitted by law. The video recordings described in Paragraph 17 will be used solely for enforcement purposes related to this Consent Decree.

22. The Consent Decree in no way limits or affects any right of entry and inspection or any right to obtain information held by the Commonwealth of Massachusetts or any of its branches, departments, agencies, or offices pursuant to applicable federal or state laws, regulations, or permits, nor does it limit or affect any duty or obligation of either company to maintain documents, records, or other information imposed by applicable federal or state laws, regulations, or permits.

13

### VII. EFFECT OF CONSENT DECREE

23.    Upon compliance by the Companies with the requirements of this Consent Decree, (a) this Consent Decree shall resolve the Companies' liability for the specific legal claims alleged against them in the Complaint (which shall have a copy of the August 9, 2019 Notice attached as an exhibit), and (b) the Commonwealth shall release the Companies from liability for the specific legal claims alleged against them in the Complaint. Notwithstanding the foregoing, the Commonwealth expressly reserves all claims for injunctive relief for violations of any of the statutes or regulations referred to in the Consent Decree, whether based upon conduct violating the terms of this Consent Decree or based upon conduct occurring after the execution of this Consent Decree.

24.    Nothing in this Consent Decree (a) shall bar any action by the Commonwealth on any legal claim not specifically pleaded in the Complaint or for any violations not revealed to the Commonwealth; (b) shall be deemed to excuse non-compliance by either Company, or any of the persons or entities otherwise bound by this Consent Decree with any law or regulation; or (c) shall preclude a separate or ancillary action by the Commonwealth to enforce the terms of this Consent Decree or any permit or other approval issued by the Massachusetts Department of Environmental Protection or EPA relative to the Facility.

25.    This Consent Decree is not a permit, or a modification of any permit, under any federal, state, or local laws or regulations. The Companies are responsible for achieving and maintaining complete compliance with all applicable federal, state, and local laws, regulations, and permits; and the Companies' compliance with this Consent Decree shall not be a defense to any action commenced pursuant to any such laws, regulations, or permits, except as set forth herein. The Attorney General's Office does not, by its consent to the entry of this Consent

14

Decree, warrant or aver in any manner that the Companies' compliance with any aspect of this Consent Decree will result in compliance with provisions of any federal, state, or local law, regulation, or permit.

26.     Nothing in this Consent Decree shall be construed to create any rights in, or grant any cause of action to, any person not a party to this Decree.

## IX. MISCELLANEOUS

27.     Cargill and Salt City understand and agree that, pursuant to 11 U.S.C. § 523(a)(7), the costs or sums that Cargill and Salt City may be required to pay under this Consent Decree are not subject to discharge in any bankruptcy.

28.     Cargill and Salt City shall pay all reasonable expenses, including reasonable attorney fees and costs, incurred by the Commonwealth in the enforcement of this Consent Decree against them.

29.     Nothing in this Consent Decree shall prevent Cargill or Salt City from taking any action otherwise required by law.

30.     The titles in this Consent Decree have no independent legal significance and are used merely for the convenience of the parties.

31.     In computing any period of time under this Consent Decree, where the last day would fall on a Saturday, Sunday, or State or Federal holiday, the period shall run until the close of business on the next Business Day.

32.     Cargill and Salt City are jointly and severally responsible for complying with this Consent Decree and are jointly and severally liable for violations of this Consent Decree so long as they both remain parties to this Consent Decree. Should a transferee be substituted for either Cargill or Salt City pursuant to paragraph 9 of this Consent Decree, then the remaining party and

15

the transferee will be jointly and severally responsible for complying with this Consent Decree and will be jointly and severally liable for violations of this Consent Decree.

33. Signature of the parties transmitted by scanning and email are binding.

## X. NOTICES

34. Unless otherwise specified in this Consent Decree, notices and submissions required by this Decree shall be made in writing by email to the following addresses:

For the Attorney General's Office and the Commonwealth:

Nora J. Chorover
Special Assistant Attorney General
Environmental Protection Division
Office of the Attorney General
One Ashburton Place, 18th Floor
Boston, MA 02108
Nora.chorover@mass.gov

For Cargill:

Gina Young, Senior Lawyer
Cargill
15407 McGinty Road West MS24
Wayzata, MN 55391
gina_young@cargill.com

For Salt City:

Mike and Jodie Gaugh
Salt City, Inc.
163 Union Street
Westfield, MA 01085
ssaltcitywestfield@juno.com

or, to such other place or to the attention of such other individual as a party may from time to time designate by written notice to the other parties to this Consent Decree.

16

## XI. INTEGRATION

35.     Except as expressly set forth in this Consent Decree, this Consent Decree sets forth all of the obligations of the parties and represents the complete and exclusive statement of the parties with respect to the terms of the settled agreement embodied by this Consent Decree; any other representations, communications, or agreements by or between parties shall have no force and effect.

## XII. MODIFICATION

36.     The terms of this Consent Decree may be modified only by a subsequent written agreement signed by the parties. Where the modification constitutes a material change to any term of this Consent Decree, it shall be effective only by written approval of the parties and the approval of the Court. The Commonwealth's decision to extend a deadline in this Consent Decree shall not constitute a material change for purposes of this Paragraph.  Three (3) years from the Effective Date, provided there are no pending enforcement actions related to this Consent Decree or outstanding disputes about compliance with this Consent Decree, the Companies' obligations under the Consent Decree shall terminate and the Commonwealth shall be deemed to have released the Companies from the violations alleged in the Complaint and the August 9, 2019 Notice Letter.

## XIII. FORCE MAJEURE

37.     Any request to extend the deadlines set forth in Section V (Injunctive Relief) shall be made in writing by the Companies to the Attorney General's Office prior to the expiration of the deadline. Upon receipt of a timely request for an extension under this Paragraph, the Attorney General's Office may, in its discretion, grant additional time if it is persuaded that the delay in performance is the result of circumstances beyond the Companies' control. The

Attorney General's Office shall not unreasonably withhold or condition an extension, but in the event the Attorney General's Office does withhold an extension, the Companies shall bear the burden of demonstrating that (a) the delay in performance is the result of circumstances beyond its control and (b) the delay could not have been prevented or avoided by the reasonable exercise of due care, foresight, or due diligence on the part of the Companies. Force majeure may include, but is not limited to, delays in performance resulting from a failure to obtain or a delay in obtaining, any permit required for the performance of obligations under this Consent Decree, provided that one or the other of the Companies has submitted timely and complete applications and taken all other actions necessary to obtain all such permits and approvals. The written notice of delay to the Attorney General's Office shall state the anticipated length of delay, the cause of the delay, and the steps or measures the Companies will take to prevent or minimize the delay. The Companies shall adopt reasonable measures to avoid or minimize the delay. Failure to comply with the notice requirements of this Paragraph shall constitute waiver by the Companies of their right to request an extension of time with regard to any delay, and a waiver of any right to relief from the deadlines in Section V (Injunctive Relief). Except as excused by the Attorney General's Office pursuant to this Paragraph, delay on the part of the Companies' contractors, subcontractors, or consultants shall be attributable to the Companies and financial inability or increased costs shall not constitute a force majeure condition. If the Parties are unable to reach an agreement on differences about a delay by informal negotiation or other mutually agreeable means of dispute resolution, then the Companies may seek review of the Attorney General's Office's determination in the United States District Court for the District of Massachusetts, and the Companies shall bear the burden of demonstrating that the Attorney General's Office's determination on was arbitrary and capricious or otherwise not in accordance with law.

18

## XIV. AUTHORITY OF SIGNATORY

38.     The person signing this Consent Decree on behalf of Cargill acknowledges: (a) that he or she has personally read and understands each of the numbered Paragraphs of this Consent Decree, including any Appendices attached to it; (b) that, to the extent necessary, Cargill's managers, directors, officers, and shareholders have consented to Cargill entering this Consent Decree and to its entry as a Final Judgement; and (c) that he or she is authorized to sign and bind Cargill to the terms of this Consent Decree.

39.     The person signing this Consent Decree on behalf of Salt City acknowledges: (a) that he or she has personally read and understands each of the numbered Paragraphs of this Consent Decree, including any Appendices attached to it; (b) that, to the extent necessary, Salt City's managers, directors, officers, and shareholders have consented to Salt City entering this Consent Decree and to its entry as a Final Judgement; and (c) that he or she is authorized to sign and bind Salt City to the terms of this Consent Decree.

## XV. RETENTION OF JURISDICTION

40.     The Court shall retain jurisdiction over this case for purposes of resolving disputes that arise under this Consent Decree, entering orders modifying this Consent Decree, or effectuating or enforcing compliance with the terms of this Consent Decree.

## XVI. FINAL JUDGEMENT

41.     Upon approval and entry of this Consent Decree by the Court this Consent Decree shall constitute a Final Judgement of the Court.

OFFICE OF THE ATTORNEY GENERAL
MAURA HEALEY, ATTORNEY GENERAL

*Nora J. Chorover*

Nora J. Chorover
Special Assistant Attorney General
Environmental Protection Division
Office of the Attorney General
One Ashburton Place, 18th Floor
Boston, MA 02108
617-963-2642
Nora.chorover@mass.gov

Dated: August 31, 2020

CARGILL, INC.

By: _____
Sonya Roberts, President & Salt Group Leader
Cargill, Incorporated
9320 Excelsior Boulevard, 6th Floor
Hopkins, MN 55343

Dated:


SALT CITY, INC.

By: _____
Leon Normandeau, President
Salt City, Inc.
40 Hayes Ave.
West Springfield, MA 01089

Dated:


IT IS SO ORDERED. JUDGMENT is hereby entered in accordance with the foregoing.

By the Court:

*Katherine Robertson, United States Magistrate Judge*
KATHERINE ROBERTSON
United States District Court

Dated: *November 5, 2020*

OFFICE OF THE ATTORNEY GENERAL
MAURA HEALEY, ATTORNEY GENERAL

_____

Nora J. Chorover
Special Assistant Attorney General
Environmental Protection Division
Office of the Attorney General
One Ashburton Place, 18th Floor
Boston, MA 02108
617-963-2642
Nora.chorover@mass.gov

Dated:

CARGILL, INC.

By: _____
Sonya Roberts, President & Salt Group Leader
Cargill, Incorporated
9320 Excelsior Boulevard, 6th Floor
Hopkins, MN 55343

Dated:    August 20, 2020


SALT CITY, INC.

By: _____
Leon Normandeau, President
Salt City, Inc.
40 Hayes Ave.
West Springfield, MA 01089

Dated:


IT IS SO ORDERED. JUDGMENT is hereby entered in accordance with the foregoing.

By the Court:


_____

United States District Court

Dated: _____

20

OFFICE OF THE ATTORNEY GENERAL
MAURA HEALEY, ATTORNEY GENERAL

_____
Nora J. Chorover
Special Assistant Attorney General
Environmental Protection Division
Office of the Attorney General
One Ashburton Place, 18ᵗʰ Floor
Boston, MA 02108
617-963-2642
Nora.chorover@mass.gov

Dated:

CARGILL, INC.

By: _____
David Wood MacLennan, President
Cargill, Inc.
15407 McGinty Road W MS26
Wayzata, MN 55391

Dated:

SALT CITY, INC.

By: _____
Leon Normandeau, President
Salt City, Inc.
40 Hayes Ave.
West Springfield, MA 01089

Dated: 8/19/20

IT IS SO ORDERED. JUDGMENT is hereby entered in accordance with the foregoing.

By the Court:

_____
United States District Court

Dated: _____

20





**U.S. Department of Justice**

Environment and Natural Resources Division

90-1-24-05384

*Law and Policy Section*
*P.O. Box 7415*
*Washington, DC  20044-7415*

*Telephone (202) 514-1442*
*Facsimile (202) 514-4231*

October 14, 2020

PROVIDED TO COUNSEL OF RECORD
TO SUBMIT TO THE COURT VIA ECF

Clerk's Office
United States District Court
District of Massachusetts, Boston Division
1 Courthouse Way, Suite 2300
Boston, MA 02210

> Re:   *Commonwealth of Massachusetts v. Cargill, Inc. et al* (D. Mass.), Case No. 1:20-CV-11616

Dear Clerk of Court:

I am writing to notify you that the United States has reviewed the proposed consent judgment in this action and does not object to its entry by this Court.

On August 31, 2020, the Citizen Suit Coordinator for the Department of Justice received a copy of the proposed consent judgment in the above-referenced case for review pursuant to Clean Water Act, 33 U.S.C. § 1365(c)(3).[1] This provision provides, in relevant part:

> No consent judgment shall be entered in an action in which the United States is not a party prior to 45 days following the receipt of a copy of the proposed consent judgment by the Attorney General and the Administrator.

*See also* 40 C.F.R. § 135.5 (service on Citizen Suit Coordinator in the U.S. Department of Justice). A settlement that does not undergo this federal review process is at risk of being void.

---

[1] The term "consent judgment" in the Clean Water Act citizen suit provisions has a broad meaning and encompasses all instruments entered with the consent of the parties that have the effect of resolving any portion of the case. For example, a document stipulating to dismissal of a case of any part thereof is within the scope of this language. Such documents and any associated instruments must be submitted to the United States and the court for review, notwithstanding any provisions purporting to maintain the confidentiality of such materials. The Department monitors citizen suit litigation to review compliance with this requirement.

In its review, the United States seeks to ensure that the proposed consent judgment complies with the requirements of the relevant statute and is consistent with its purposes. *See Local 93, Int'l Ass'n of Firefighters v. City of Cleveland*, 478 U.S. 501, 525-26 (1986) (a consent decree should conform with and further the objectives of the law upon which the complaint was based). For example, if the defendant has been out of compliance with statutory or permit requirements, the proposed consent judgment should require the defendant to come into prompt compliance and should include a civil penalty, enforceable remedies, injunctive relief, and/or a supplemental environmental project (SEP) payment sufficient to deter future violations, or combinations of the above.

Given the facts of this case, the United States has no objection to the proposed consent judgment. The fact that we do not have a basis to object to this consent judgment does not imply approval of this instrument.

The United States affirms for the record that it is not bound by this settlement. *See, e.g., Hathorn v. Lovorn*, 457 U.S. 255, 268 n.23 (1982) (Attorney General is not bound by cases to which he was not a party); *Gwaltney of Smithfield, Ltd. v. Chesapeake Bay Found. Inc.*, 484 U.S. 49, 60 (1987) (explaining that citizen suits are intended to "supplement rather than supplant governmental action"); *Sierra Club v. Electronic Controls Design*, 909 F.2d 1350, 1356 n.8 (9th Cir. 1990) (explaining that the United States is not bound by citizen suit settlements, and may "bring its own enforcement action at any time"); 131 Cong. Rec. S15,633 (June 13, 1985) (statement of Senator Chafee, on Clean Water Act section 505(c)(3), confirming that the United States is not bound by settlements when it is not a party). The United States also notes that, if the parties subsequently propose to modify any final consent judgment entered in this case, the parties should so notify the United States, and provide a copy of the proposed modifications, forty-five days before the Court enters any such modifications. *See* 33 U.S.C. §1365(c)(3).

We appreciate the attention of the Court. Please contact the undersigned at (202) 353-0132 if you have any questions.

Sincerely,

*/s/ Stacy Stoller*

Stacy Stoller, Attorney
U.S. Department of Justice
Environment and Natural Resources Division
Law and Policy Section
P.O. Box 7415
Washington, D.C. 20044-4390

cc:    Counsel on Record via ECF

-2-